## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**TINA R. KEY,**
  **Plaintiff,**

**v.**           **No: 3:07cv240/RV/MD**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**
  **Defendant.**

_____

### REPORT AND RECOMMENDATION

  **This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes. It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Key's application for disability insurance benefits under Title II of the Act.**

  **Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.**

## PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits claiming a disability onset date of August 15, 2003.  The application was denied initially and on reconsideration and plaintiff requested a hearing before an Administrative Law Judge (ALJ).  A hearing was held on June 21, 2006 at which plaintiff was represented by counsel and testified.  A vocational expert also testified.  The ALJ rendered an unfavorable decision on August 24, 2006 (tr. 20-25) and the Appeals Council declined review (tr. 5-7), making the decision the ALJ the final decision of the Commissioner, and therefore subject to review in this court.  *Falge v. Apfel*, 150 F.3d 1320 (11ᵗʰ Cir. 1998).  This appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that plaintiff had severe impairments of (1) carpal tunnel syndrome and (2) arthropathy of the left knee, but that she did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; that she had the residual functional capacity to perform unskilled work at the sedentary level in that she could lift and carry ten pounds, sit for six hours in an eight hour workday and stand and walk for six hours in an eight hour workday; that she was unable to perform her past relevant work as a licensed practical nurse or retail stocker; that she was a younger individual with a high school education; that the medical/vocational rules supported a finding of not disabled; and that she was not disabled as defined in the Act (tr. 22-25).

## STANDARD OF REVIEW

The ALJ's decision will be reversed only if it is not supported by substantial evidence.  *Falge, supra*.  The court must determine whether the Commissioner's decision is supported by substantial evidence in the record and whether it is

premised upon correct legal principles.  *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles."  *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983).  In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision.  *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)(citations omitted).  Findings of fact by the Commissioner that are supported by substantial evidence are conclusive.  42 U.S.C. § 405(g); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

 A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps.  A finding of disability or no disability at any step renders further evaluation unnecessary.  The steps are:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4.     **Does the individual have any impairments which prevent past relevant work?**

5.     **Do the individual's impairments prevent any other work?**

The claimant bears the burden of establishing a severe impairment that keeps her from performing her past work.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  *Chester v. Bowen*, supra, 792 F.2d at 131; *MacGregor v. Bowen*, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, claimant must prove that she cannot perform the work suggested by the Commissioner.  *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## PLAINTIFF'S MEDICAL HISTORY

Throughout the time relevant to this appeal, plaintiff's treating physicians were Anju Garg, M.D., and P. K. Garg, M.D., both family practitioners (hereafter Drs. Garg).  Drs. Garg work in the same clinic and they both treated plaintiff from time to time.  It is unclear from the record when plaintiff first saw Drs. Garg but they referred her for an MRI of her left knee on May 8, 2003 (tr. 215).  The MRI findings indicated that the medial and lateral menisci were normal in appearance and the ligaments were intact, but there was some swelling of the medial and lateral patella suggestive of some degree of injury.  The MRI was otherwise unremarkable (tr. 214). The records from the clinic of Drs. Garg cover the time period from September 5, 2003 to June 9, 2006 (tr. 181-196, 229-234, 247-256), during which time Drs. Garg saw plaintiff for multiple medical problems.  During most of her visits plaintiff complained of left knee pain.  However, at no time did either of the Drs. Garg make any notation of any specific physical limitations on plaintiff's part.

Drs. Garg referred the plaintiff to Michael Hartsfield, M.D., an orthopedic surgeon, who saw her on September 29, 2003.  Plaintiff described problems with her

left knee after a dashboard injury in 1991.  The problem improved, however, while at work in 2001 something popped in plaintiff's knee when she stooped down.  She indicated that she had never really recovered from that and had swelling and throbbing, and difficulty in going up and down stairs, as well as in stooping and squatting.  Dr. Hartsfield reviewed the MRI from May 8, 2003 and while he felt the quality was not good, he also felt that it revealed a medial meniscus tear.  He recommended arthroscopic evaluation of the knee (tr. 160).  An arthroscopy was performed on October 16, 2003.  Pre-operative examination of the knee showed full motion with no swelling or instability and normal patellar tracking.  There was slight hyperextension. Arthroscopic examination revealed a large thick plica medially.  The medial joint compartment revealed an intact medial meniscus with an area of Grade 3 chondromalacia in the weight-bearing surface of the medial femoral condyle. There was no indication of a meniscal tear.  Dr. Hartsfield performed non-abrasion chondroplasty of the medial femoral condyle and excision of the plica (tr. 259-263).

Plaintiff was referred to physical therapy which lasted from October 17, 2003 to November 21, 2003 (tr. 141-156).  She gradually progressed to walking with a cane and at her last physical therapy session on November 21, 2003 the therapist noted that plaintiff reported continued improvement and continued to progress with strength and gait with the use of a cane (tr. 141).

In the meantime, plaintiff had returned to Dr. Hartsfield on November 3, 2003. She was doing well with nearly full and easy motion and good healing (tr. 159). Plaintiff next saw Dr. Hartsfield on November 25, 2003, six weeks post-operative, and had full extension, mild pain in the medial joint line but no swelling or significant tenderness.  Dr. Hartsfield recommended that plaintiff continue to walk with a cane and return in two to three months (tr. 158).  Plaintiff returned on January 7, 2004.  Dr. Hartsfield noted that plaintiff was heavy, five feet four inches tall and weighing 284 pounds.  There was no effusion in the knee and she had full motion although there was mild atrophy in the thigh.  Dr. Hartsfield's plan was for plaintiff to engage in

activity as tolerated with strengthening and weight loss, and told plaintiff to return as necessary (tr. 157).

On February 24, 2004, plaintiff was examined by Richard Lucey, M.D., a family practitioner, at the request of the Office of Disability Determinations. Plaintiff gave a history of chronic knee pain in her left knee and arthroscopic surgery, with some continuing pain and stiffness in her left knee.  She also complained of low back pain which had been progressing for several years.  She stated that a previous MRI of her low back indicated disc disease with mildly dehydrated discs in the lower thoracic area.  She stated that the back pain was low to mid line but aggravated with bending, stooping, and heavy lifting.  She also had pain in her hand and wrist, and nerve conduction studies in the past had indicated carpal tunnel syndrome on the right and possibly on the left.  On physical examination there was mild crepitus in the left knee but full range of motion with no weakness, laxity and swelling at any major joint.   Deep tendon reflexes were negative as was straight left raising to full extension when sitting.  Examination of the back indicated erect posture, plaintiff had normal gait, including normal heel, toe and tandem walking without evidence of weakness.  She displayed subjective discomfort when going from the supine position to sitting and range of motion in the thoraco lumbar spine was diminished primarily in forward flexion due to complaints of subjective discomfort (tr. 161-163).

A December 3, 2003 lumbar MRI revealed mild disc degeneration at L3-4 and minimal degeneration at L5-S1 without evidence of compromising lesions (tr. 210). A cervical MRI performed on April 12, 2004 revealed a spondylitic disc bulge with left paracentral disc protrusion at C4-5 and bulging to a lesser degree at C3-4 and C5-6 (tr. 198).  On February 1, 2006 plaintiff was examined by Marty Gagliardi, M.D., at the request of the Office of Disability Determinations.  Plaintiff gave a history of back pain on and off over five years with knee pain for about three years.  She reported that she had tried Flexoril and Talwin but nothing much helped her knee pain.  On examination she had normal station and gait.  Her low back demonstrated some

tenderness.  There was full range of motion in the hips, knees and ankles.  There was no spinal spasm.  Neurological examination of the legs was normal.  There was some crepitation in both knees but no swelling or ligament instability.  There was slight lateral tilting of both patellae.  Examination of the neck revealed full flexion and extension with some limitation in tilt and rotation.  X-rays of the cervical spine demonstrated localized degenerative changes between C5 and C6.  Dr. Gagliardi's impression was cervical disc disease, lumbar spondylosis with lumbosacral degenerative disc disease and associated spina bifida in the first sacral arch, and bilateral chondromalacia of the patellae.  Dr. Gagliardi felt that plaintiff might benefit from physical therapy, therapeutic exercises and patellar tracking bracing for the knees.  She was not a candidate for back or neck surgery.  Dr. Gagliardi felt that plaintiff could lift ten pounds or less, with frequent lifting of less than ten pounds so long as it was not repetitive above the shoulder level.  She would be able to tolerate standing and walking for two hours at a time in an eight hour workday, 30 minutes uninterrupted, but would need an assistive device such as a cane.  She could sit for up to six hours in an eight hour day, two hours uninterrupted, with the ability to change positions at will (tr. 235-238).

Plaintiff saw Dr. Hartsfield one last time, on April 19, 2006, this time for her right knee.  She indicated that while she still had problems with her left knee, her right knee was becoming worse.  An MRI in January 2006 (which is not in the record) indicated a medial meniscus tear.  On examination plaintiff could ambulate without gait aides, with a deliberate but relatively normal gait.  There was full extension in both knees with no obvious deformity except mild valgus.  There was no swelling.  There was no muscle atrophy and there was adequate muscle strength and tone.  There was medial joint line pain and tenderness on the right but not on the left.  Dr. Hartsfield agreed that she probably had a medial meniscus tear and that she would have to consider arthroscopic evaluation.  In the meantime, he recommended Advil or a similar anti-inflammatory medication (tr. 257).

## DISCUSSION

The plaintiff argues that the ALJ erred in failing to consider the effect of her obesity combined with her other conditions, in failing to give proper weight to her treating physicians, and in failing to give proper weight to her subjective complaints of pain, and that plaintiff was disabled from her onset date as a matter of law.  The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained.  The issue thus presented is whether the ALJ's decision that the plaintiff was not disabled, in light of her physical condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

1.     Obesity.

Plaintiff first contends that the ALJ erred in not considering the effect of her obesity combined with her other conditions.  Obesity is recognized by the Regulations as "a medically determinable impairment that is often associated with disturbance of the musculoskeletal system . . . [which] can be a major cause of disability . . ." and must be considered in making a residual functional capacity determination.  20 C.F.R. § 404, Subpt. P, App. 1, 1.00(Q).  However, obesity is not itself a listed disability, nor is it defined in the Regulations.  In a Social Security Ruling, the Commissioner provides that when establishing the existence of obesity, "we will generally rely on the judgment of a physician who has examined the claimant and has reported his or her appearance or build, as well as height and weight."  SSR 02-1p(4) (2002).

Plaintiff argues that the ALJ did not mention plaintiff's obesity despite the fact that obesity was well noted on virtually every medical record available to the ALJ (doc. 8, p. 4).  It is true that the ALJ did not mention obesity.  However, plaintiff's reference to the record (tr. 166, 174, 181-196, 229-234, 236) are all to Drs. Garg's records, which indeed record plaintiff's height and weight.  Nowhere, however, do Drs. Garg mention, much less diagnose, obesity, nor do they opine that obesity

affects plaintiff's health.  Indeed, the only recommendation for weight loss was noted by Dr. Hartsfield shortly after plaintiff's knee surgery.

When Dr. Gagliardi examined the plaintiff, he noted that she was 5' 4" tall and weighed 255 pounds, but described her as "an otherwise healthy-appearing woman." (Tr. 236).  He did not diagnose obesity, nor did he recommend that plaintiff lose weight.  He recommended physical therapy, therapeutic exercises and a knee brace only.  Dr. Hartsfield noted at his April 2006 examination that plaintiff had lost 30 pounds, but he did not comment beyond that.  It thus appears that the physicians who saw plaintiff were not overly concerned about her weight.  The same can be said about plaintiff.  She did not mention obesity in her application or claim it as disabling (tr. 87, 96). *See*, *Bowser v. Commissioner,* 121 Fed.Appx. 231 (9th Cir. 2004) (unpublished opinion) (holding that the ALJ did not err in failing to discuss obesity where plaintiff did not claim it as disabling, there was no medical diagnosis of obesity, plaintiff was not told to lose weight, and no physician opined that plaintiff's weight caused her afflictions).  Plaintiff is not entitled to reversal on this ground.

　　2.　　<u>Treating physician.</u>

Plaintiff next contends that the ALJ erred in not giving appropriate weight to the opinions of her treating physicians.  She says that the records of Drs. Garg "clearly support a finding of disability" (doc. 8, p. 6), but points to nothing specific to support this conclusion.  Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-1241 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Broughton v. Heckler*, 776 F.2d 960, 960-961 (11th Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986).  "Good cause" exists when:  (1) the treating physician's opinion was not bolstered by the evidence;  (2) the evidence supported a contrary finding;  or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips,* 357 F.3d at 1241; see also *Lewis,* 125 F.3d at 1440 (citing cases).

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen,* 816 F.2d 578, 582 (11th Cir. 1987).  When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) medical evidence supporting the opinion; consistency with the record as a whole; 5) specialization in the medical issues at issue; and 6) other factors which tend to support or contradict the opinion.  20 C.F.R. 404.1527(d).

The flaw in plaintiff's argument is that Drs. Garg never ventured an opinion on any physical limitations at all.  Their records record complaints, diagnoses (typically low back pain and knee pain) and treatment, nothing more.  Because there was no treating physician opinion to which the ALJ should have given any particular weight, there can be no error.

>   3.   <u>Subjective complaints of pain.</u>

Finally, plaintiff contends that the ALJ misapplied the Eleventh Circuit pain standard.  As this court is well aware, pain is treated by the Regulations as a symptom of disability.  Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms."  *Accord* 20 C.F.R. § 416.929.

The Eleventh Circuit has articulated the three-part pain standard, sometimes referred to as the *Hand*[1] test, as follows:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Ogranaja v. Commissioner of Social Security*, 186 Fed.Appx. 848, 2006 WL 1526062, *3+ (11th Cir. 2006) (quoting *Wilson*) (Table, text in WESTLAW); *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1216 (11th Cir. 1991).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." *Wilson, supra*, 284 F.3d at 1226. Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

But "[w]hile both the Regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam*, 921 F.2d at 1215. The Eleventh Circuit has held that "pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)(citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)); *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1259 (M.D.Fla. 2005). However, the presence or absence of evidence to support symptoms of the severity claimed is a factor that can be

---

[1] *Hand v. Bowen*, 793 F.2d 275, 276 (11th Cir.1986) (the case originally adopting the three-part pain standard).

considered.  *Marbury*, 957 at 839-840;  *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, if the Commissioner refuses to credit subjective testimony of the plaintiff concerning pain he must do so explicitly and give reasons for that decision. *MacGregor v. Bowen*, 786 F.2d at 1054.   Where he fails to do so, the Eleventh Circuit has stated that it would hold as a matter of law that the testimony is accepted as true.  *Holt v. Sullivan*, 921 F.2d at 1223; *MacGregor v. Bowen*, 786 F.2d at 1054. Although the Eleventh Circuit does not require an  explicit finding as to a claimant's credibility, the implication must be obvious to the reviewing court. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).   The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole.  *Dyer*, 395 F.3d at 1210 (11th Cir. 2005) (internal quotations and citations omitted).   And of course, the reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence.  *Wilson*, 284 F.3d at 1225-1226; *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991); *Hurley*, 385 F.Supp.2d at 1259.

Underlying the *Hand* standard is the need for a credibility determination concerning a plaintiff's complaints of pain.   Those complaints are, after all, subjective.   "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain."  *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[2]   People with objectively identical conditions can experience

---

[2]  Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit.  *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

significantly different levels of pain, and pain is more readily treated in some than in others.  "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain.  This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ."  *Hand, supra,* at 1548-49.  It is within the ALJ's "realm of judging" to determine whether "the quantum of pain [a claimant] allege[s] [is] credible when considered in the light of other evidence."  *Arnold v. Heckler*, 732 F.2d 881, 884  (11th Cir. 1984).   Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that.  The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief or the plaintiff's claims, is the basis for the ALJ's credibility determination.

Here plaintiff had objective evidence of problems with her knees and back.  The ALJ so found.  However, he found that the level of pain of which plaintiff complained was not consistent with the medical records, the opinions (or lack thereof) of the treating physicians, or her level of activities, which included attending to her personal needs and grocery shopping (tr. 24).  The ALJ ultimately determined that plaintiff could do sedentary work, which includes walking or standing for no more than two hours in an eight hour day.  There was substantial record evidence to support this finding, and the ALJ's determination of plaintiff's lack of credibility was well within his realm of judging.

Accordingly, it is respectfully RECOMMENDED that the decision of the Commissioner be AFFIRMED, that this action be DISMISSED and that the clerk be directed to close the file.

At Pensacola, Florida this 10th day of April, 2008.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**